IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

THE KANAWHA-GAULEY COAL & COKE COMPANY,

    Plaintiff,

v.             CIVIL ACTION NO.  2:09-cv-01278

PITTSTON MINERALS GROUP, INC.,

    Defendant.

**MEMORANDUM OPINION AND ORDER**

Pending before the court are the defendant's Motion for Summary Judgment [Docket 51] and the plaintiff's Motion for Summary Judgment [Docket 53]. For the following reasons, both of the Motions are hereby **DENIED**.

**I. Background**

This case arises out of a breach of a lease of coal property and related surface rights. In 1998, the plaintiff, Kanawha-Gauley Coal & Coke Company ("Kanawha-Gauley"), entered into a lease with Kanawha Development Corporation ("KDC"), a subsidiary of the defendant, Pittston Minerals Group ("Pittston"). Under the lease, Kanawha-Gauley agreed to lease property to KDC for mining purposes in exchange for receiving wheelage and royalty payments. In a separate agreement, (the "agreement"), ancillary to the lease, Pittston agreed (1) to be jointly bound with

KDC under the lease, (2) to guarantee KDC's performance under the lease, and (3) to hold Kanawha-Gauley harmless from any expenses or losses due to a default by KDC under the lease.

In 2003, the stock of KDC was sold to Appalachian Coal Holdings[1], however, the lease and the agreement remained in effect pursuant to a clause in the lease. In late 2008, the relationship between the plaintiff and KDC declined, culminating in a series of major lease defaults by KDC. On May 22, 2009, Kanawha-Gauley sent Notice of Default to both KDC and Pittston. The Notice gave the parties twenty days to cure the default. Neither KDC nor Pittston cured the default, and Kanawha-Gauley terminated the lease on June 19, 2009. Apparently, during the time that KDC was in default on the lease, mining equipment and "coal stockpiles" were left on the leased premises. The parties dispute both the ownership and the value of this property.

On September 25, 2009, Kanawha-Gauley filed an action against Pittston in the Circuit Court of Fayette County, West Virginia. The plaintiff's Complaint asserts claims for breach of contract and estoppel and the plaintiff claims damages for unpaid royalties, unpaid wheelage, unpaid real estate taxes, missing coal, lost coal, and unperformed reclamation obligations as well as legal costs and fees. On November 24, 2009, the defendant removed the action to this court pursuant to 28 U.S.C. § 1332 based on complete diversity of citizenship between the parties.

On November 3, 2010, each party moved for summary judgment. The plaintiff asserts that there are no genuine issues of material fact as to the defendant's liability or the amount of damages. The plaintiff asserts that the defendant is fully liable to the plaintiff for all sums owed under the lease as well as for attorneys' fees and costs that the plaintiff has incurred as a result of KDC's

---

[1] KDC and Appalachian Coal Holdings are currently involved in bankruptcy proceedings in the Eastern District of Kentucky, which do not bear on the motions presently at issue.

breach of the lease. Pittston contends, however, that there are genuine issues of material fact with respect to four affirmative defenses that it asserts: (1) Kanawha-Gauley breached its duty of good faith to Pittston; (2) Kanawha-Gauley is barred from recovery because it failed to enforce its landlord's lien against KDC's property; (3) Kanawha-Gauley failed to give Pittston timely notice of KDC's breach of the lease; and (4) Kanawha-Gauley failed to mitigate its damages.

## II. Standard

To obtain summary judgment, the moving party must show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In considering a motion for summary judgment, the court will not "weigh the evidence and determine the truth of the matter." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Instead, the court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).

Although the court will view all underlying facts and inferences in the light most favorable to the nonmoving party, the nonmoving party nonetheless must offer some "concrete evidence from which a reasonable juror could return a verdict in his [or her] favor." *Anderson*, 477 U.S. at 256. Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, a showing sufficient to establish that element. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his or her position. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or

unsupported speculation, without more, are insufficient to preclude the granting of a summary judgment motion. *See Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987); *Ross v. Comm'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985), *abrogated on other grounds*, 490 U.S. 228 (1989).

**III.   Analysis**

After reviewing the parties' papers, the relevant case law, and numerous sources on both suretyship and landlord-tenant law, and hearing oral arguments on the pending motions for summary judgment, the court has whittled the dispositive issues down to the following: did Kanawha-Gauley have a landlord's lien on property on the leased premises, and, if so, did Kanawha-Gauley have an affirmative legal duty to enforce this lien? The second element—the existence of an affirmative duty to enforce a landlord's lien—is essential to Pittston's defense. If there is no affirmative duty imposed by law to enforce a landlord's lien against a lessee before attempting to collect from a guarantor, then the existence of such a lien would not provide the guarantor with a complete defense. Because I **FIND** that Kanawha-Gauley did not have a duty to enforce any landlord's lien before proceeding against Pittston, I need not determine whether Kanawha-Gauley had a landlord's lien.[2] Accordingly, for purposes of this analysis, I will assume that Kanawha-Gauley had a landlord's lien pursuant to the West Virginia Code. *See* W. Va. Code §§ 37-6-13; 37-6-18 (2005).

Pittston has not cited any legal authority from any jurisdiction which directly supports its assertion that a lessor is required to enforce a landlord's lien against a lessee before attempting

---

[2] Contrary to Pittston's assertion, the "admission" in discovery by a Kanawha-Gauley employee that Kanawha-Gauley had a landlord's lien is not relevant to this court's inquiry into whether, as a legal matter, Kanawha-Gauley had such a lien.

-4-

collect from a guarantor for rent. Pittston instead analogizes Kanawha-Gauley to a secured creditor and asserts that Kanawha-Gauley had the legal rights and obligations of a secured creditor of KDC. To the extent that Pittston's arguments rely on placing Kanawha-Gauley in the shoes of a secured creditor, these arguments fail. Kanawha-Gauley was a *landlord*, not a secured creditor. At no point in the record is there *any* mention of KDC pledging collateral or security to Kanawha-Gauley or otherwise becoming a secured creditor.

Kanawha-Gauley was, at most, a lienholder and any landlord's lien possessed by Kanawha-Gauley's lien existed solely by operation of law. It is undisputed that Kanawha-Gauley did not take any steps towards enforcing or otherwise "perfecting" this lien. "An inchoate lien exists when the lienor's exact identity, the certainty of amount and time of attachment await future determination." *Unite States v. White*, 325 F. Supp. 1133, 1135 (S.D. W. Va. 1971). A landlord's lien, while "considered by the state courts to be specific and perfected and as relating back to the beginning of the tenancy, . . . is inchoate as of the time the federal lien attached *in cases in which the landlord has not obtained a judgment or has not seized and sold the tenant's property*." *Id.* (emphasis added) (citing *United States v. Lawler*, 112 S.E.2d 921 (Va. 1960)). The inchoate nature of a landlord's lien is particularly evident in the present case where no collateral for this landlord's lien was ever identified, specified, or quantified. Indeed, Williston on Contracts only lists liens obtained by "attachment, judgment, or execution," in noting that the surrender of such a lien "reduces the creditor's claim against the surety to the extent of the value of the lien." 23 R Lord., Williston on Contracts § 61:25 (4th ed. 2002). The lack of identifiable collateral in the present case is consistent with my view that an unenforced inchoate landlord's lien creates an interest entirely different from an interest created by a secured transaction or lien obtained by attachment, judgment, or execution.

At the time of KDC's default, Kanawha-Gauley had, at best, an inchoate lien against the equipment and coal on the leased premises, and thus none of Kanawha-Gauley's actions (or inactions) can properly be considered "surrender" of a lien

In addition, Pittston's arguments that "[a] creditor is bound to use proper care and diligence in the management and collection of collateral securities; and a surety will be released, to the extent of the loss actually sustained by the negligence of the creditor, to the same extent, as if such loss was due to some positive act of the creditor," are unavailing in this case because there were no "collateral securities" at issue. (Def.'s Mem. In Supp. of Mot. for Summ. J., at 9-11 (quoting *First Nat'l Bank v. Kittle*, 71 S.E. 109, 109 (W. Va. 1911)). Rather, Pittston provided Kanawha-Gauley with an unconditional guaranty of KDC's performance under the lease to the same extent as if it had been a joint lessee and Pittston concedes that KDC defaulted on the lease. "A lessor can recover on an unconditional guaranty of a lease by proving a claim against the tenant on the underlying lease agreement." 49 Am Jur. 2d *Landlord and Tenant* § 664 (2006). Accordingly, I **FIND** that Kanawha-Gauley did not have a duty to enforce its lien against KDC before proceeding against Pittston, who unconditionally guaranteed KDC's performance under the lease.

Pittston, while conceding KDC's breach, asserts additional affirmative defenses. First, Pittston asserts that Kanawha-Gauley breached its duty of good faith and fair dealing to Pittston. Pittston further asserts that Kanawha-Gauley failed to provide Pittston with timely notice of KDC's breaches of the lease, and that Kanawha-Gauley failed to mitigate its damages. I **FIND** that genuine issues of material fact exist as to Pittston's remaining defenses. Accordingly, the parties' Motions for Summary Judgment are **DENIED**.

**IV.     Conclusions**

For the foregoing reasons, the defendant's Motion for Summary Judgment [Docket 51] and the plaintiff's Motion for Summary Judgment [Docket 53] are **DENIED**.  The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.


ENTER:       February 24, 2011


Joseph R. Goodwin, Chief Judge